**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

STACY G.,

                    Plaintiff,

          v.                                              No. 3:18-CV-143
                                                          (CFH)
NANCY A. BERRYHILL,
Commissioner of Social Security

                    Defendant.

---

**APPEARANCES:**                          **OF COUNSEL:**

Lachman, Gorton Law Firm                  PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Attorney for plaintiff


Social Security Administration            DAVID B. MYERS, ESQ.
Office of Regional General Counsel,       Special Assistant U.S. Attorney
Region II
26 Federal Plaza, Rm. 3904
New York, New York 10278
Attorney for Defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION AND ORDER

Plaintiff Stacy G. brings this action pursuant to 42 U.S.C.§ 405(g) and 42 U.S.C. §

1383(c)(3) seeking review of a decision by the Commissioner of Social Security

("Commissioner") or ("defendant") denying her application for supplemental security income

benefits ("SSI") and disability insurance benefits. Dkt. No. 1 ("Compl.").[1] Plaintiff moves for

---

[1]  Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. §
636(c), FED. R. CIV. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.

a finding of disability, and the Commissioner cross-moves for judgment on the pleadings.

Dkt. Nos. 8, 11. For the reasons set forth below, plaintiff's motion is denied, and

defendants' motion for judgment on the pleadings is granted. The Commissioner's decision

denying plaintiff disability benefits is confirmed, and the complaint is dismissed.

## I. Relevant Background

## A. Factual Background

Plaintiff, born in 1989, graduated from high school with a Regents Diploma. T. 35.[2]

Plaintiff previously worked as a clerk at a Hess station and as a teacher's assistant at a

daycare. Id. at 36. Plaintiff left her position with Hess after a blood clot in her left leg

resulted in lymphedema. Id. at 36-37. She has not been employed on a full-time basis

since leaving Hess. Id.

## B. Procedural Background

On June 29, 2014 plaintiff protectively filed an application for Social Security income

alleging disability beginning December 10, 2014. T. 15. Plaintiff's application was initially

denied on August 6, 2014. Id. at 97-100. Plaintiff requested a hearing before an

administrative law judge ("ALJ"), and a hearing was held on July 27, 2016 before ALJ Marie

Greener. Id. at 103-105. On September 6, 2016 ALJ Greener issued a decision concluding

plaintiff was not disabled. Id. at 15-23. The Appeals Council denied plaintiff's request for

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 15. Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

review, making the ALJ's findings the final determination of the Commissioner. Id. at 1-3. Plaintiff commenced this action on February 2, 2018. See Compl.

## C. ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged in substantial gainful activity since June 9, 2014, the application date. T. 17. The ALJ found at step two that, during the period in question, plaintiff had the severe impairments of obesity, lymphedema and asthma. Id. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equaled the severity of one of the listed impairments in 20 C.F.R Part 404 Subpart P, Appendix 1. Id. at 18. Before reaching step four, the ALJ determined that plaintiff had the residual functional capacity ("RFC") "to perform sedentary work as defined in 20 C.F.R. 416.967(a) except that she should avoid concentrated exposure to respiratory irritants, particularly smoke and fumes." Id. At step four, the ALJ concluded that plaintiff is unable to perform her past relevant work as a daycare worker or as a cashier. Id. at 22. At step five, considering plaintiff's age, education, work experience, and residual functional capacity, together with the Medical-Vocational Guidelines, the ALJ concluded that there are other jobs existing in the national economy which plaintiff is able to perform. Id. Thus, the ALJ determined that plaintiff "has not been under disability, as defined in the Social Security act, since June 9, 2014, the date the application was filed." Id. at 23.

## D. The Parties' Arguments

Plaintiff contends that the ALJ erroneously failed to conclude at step two that her migraine headaches were a severe impairment, and failed to include any associated limitations in the RFC. Dkt No. 8 at 7-11. Plaintiff further contends that the ALJ substituted her lay opinion for that of the medical professionals on the issues of maintaining work pace and/or attendance. Id. at 11-16. Lastly, plaintiff contends that the ALJ's step five determination is not supported by substantial evidence. Id. at 16-17. Conversely, the Commissioner argues that the ALJ properly assessed the severity of plaintiff's impairments. Dkt. No. 11 at 7-11. The Commissioner further argues that in determining plaintiff's RFC, the ALJ did not substitute her lay opinion for medical evidence. Id. at 11-13. Lastly, the Commissioner contends that the ALJ did not err in relying on the Grids. Id. at 13-14.

## II. Relevant Legal Standards

## A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder *would have to conclude otherwise*." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986). However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based on his

or her age, education, and work experience.  Id. § 423(d)(2)(A).  Such an impairment must

be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id.

§ 423(d)(3).  Additionally, the severity of the impairments is "based [upon] objective medical

facts, diagnoses or medical opinions inferable from the facts, subject complaints of pain or

disability, and educational background, age, and work experience."  Ventura v. Barnhart,

No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur

v. Heckler, 722 F.2d 1033, 1037) (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520,

to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity
>
> If he [or she] is not, the [Commissioner] next considers whether
> the claimant has a "severe impairment" which significantly limits
> his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an
> impairment which is listed in Appendix 1 of the regulations.  If
> the claimant has such an impairment, the [Commissioner] will
> consider him [or her] disabled without considering vocational
> factors such as age, education, and work experience; the
> [Commissioner] presumes that a claimant who is afflicted with
> a "listed" impairment is unable to perform substantial gainful
> activity.
>
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, he [or she] has the residual functional capacity to
> perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past
> work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  The plaintiff bears the initial burden of proof to

establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1179-80

(2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the

burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful

employment somewhere.  See id. at 1180 (citing Berry, 675 F.2d at 467).

### III. Relevant Medical Evidence

### 1. Rita Figueroa, M.D. Internal Medicine

Dr. Rita Figueroa performed a consultative internal medicine examination of plaintiff

on July 10, 2014.  T. 333-37.  Plaintiff was 25-years-old at the time of the examination. Id.

at 333.  Plaintiff's complaints included (1) a history of deep vein thrombosis on the left calf

in 2010; (2) hypertension since 2004; (3) migraine headaches for "as long as she can

remember"; (4) morbid obesity; (5) hypothyroidism since 2006; and (6) asthma since 2010.

Id. at 333-34.  Dr. Figueroa noted that plaintiff was treating her migraines with Propanolol,

which had decreased the migraines from once a week to once or twice a month. Id. at 333.

Plaintiff advised Dr. Figueroa that she cooks on a daily basis, and that she cleans, does

laundry, and shops once a week. Id. at 334.  Plaintiff stated that she showers every other

day and dresses daily. Id.  For entertainment, plaintiff reported that she watches television,

listens to the radio, reads, and goes shopping. Id.  At the time of the examination, Kelly

Storrs, F.N.P. was plaintiff's primary care physician. Id.

On examination, plaintiff did not appear to be in acute distress. T. 335.  Plaintiff had

a normal gait, and could walk on her heels and toes without difficulty.  Id.  She did not use

any assistive devices and did not require help in changing for the examination or in getting

on or off the exam table. Id. Plaintiff was able to rise from her chair without difficulty. Id. Plaintiff's cervical spine and lumbar spine both showed "full flexion, extension, lateral flexion bilaterally an full rotary movement bilaterally." Id. at 336. She had full range of motion of her shoulders, elbows, forearms, wrists, hips, knees and ankles bilaterally. Id. Dr. Figueroa found plaintiff's joints to be stable and nontender. Id.

Dr. Figueroa diagnosed plaintiff with left calf deep vein thrombosis, hypertension, migraines, morbid obesity, hypothyroidism, and asthma. T. 336. Dr. Figueroa found plaintiff's prognosis to be fair. Id. Dr. Figueroa opined that plaintiff should avoid smoke, dust, fumes, and any respiratory irritants due to her history of asthma. Id. She further opined that moderate limitations for activities that require standing due to her history of deep vein thrombisis. Id. Dr. Figueroa did not observe any other limitations during her evaluation. Id.

### 2. Dr. Heather Rattenbury D.O.

Dr. Heather Rattenbury, plaintiff's primary care provider, submitted a medical source statement dated July 6, 2016. T. 466-68. Dr. Rattenbury's statement was based on her treatment of plaintiff from February 18, 2016 to July 6, 2016. Id. Dr. Rattenbury indicated that she had treated plaintiff for migraine headaches with blurred vision, photophobia, aura, headaches, nausea, and dizziness; asthma; hypothyroid; depression; "HTN"; obesity; GERD; lymphedema; and "OSA." Id. at 466. Dr. Rattenbury further indicated that plaintiff's symptoms caused her pain and fatigue. Id. She opined that the pain from plaintiff's conditions, and the side effects of medication, would diminish plaintiff's concentration and work pace. Id. Dr. Rattenbury noted that plaintiff would be required to rest at work. Id.

8

Dr. Rattenbury opined that as a result of plaintiff's condition she would be off task more than 33% of the workday. T. 466. She indicated that plaintiff would experience good days and bad days at work, and could be expected to miss work more than four days per month. Id. at 466-67. Dr. Rattenbury indicated that plaintiff could sit for approximately six hours in an eight-hour workday, and would be required to change positions every thirty minutes. Id. Plaintiff could stand for approximately one hour out of an eight hour workday. Id.

Dr. Rattenbury found plaintiff to be obese, and indicated that plaintiff's obesity would cause fatigue and make it difficult for plaintiff to sustain an appropriate work pace. T. 467-68. Plaintiff's obesity would also impose limitations on stooping, crawling, crouching and kneeling. Id. at 468.

Dr. Rattenbury also submitted a questionnaire dated October 18, 2016. T. 9. In the one-page statement entitled "Need to Elevate Feet," Dr. Rattenbury indicated that plaintiff would be required to elevate her feet during the day as a result of chronic bilateral lower extremity lymphedema. Id. She stated that plaintiff would be required to elevate her feet for seventy-five percent of the day. Id. She further indicated that plaintiff's need to elevate her feet has been present since at least June 9, 2014. Id.

## IV. Legal Analysis

### A. Whether the ALJ Properly Considered Plaintiff's Migraines at Step Two

At step two, the ALJ must determine whether the claimant has a severe impairment that significantly limits his physical or mental abilities to do basic work activities. 20 C.F.R.

§ 416.920(c).  Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations.  Taylor v. Astrue, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing Gibbs v. Astrue, No. 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. §§ 404.1521(b)(1)-(5)).  "Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims,' [] the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe."  Taylor, 32 F. Supp. 3d at 265 (quoting Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995); Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).  Overall, the claimant retains the burden of presenting evidence to establish severity.  See id. (citing Miller v. Comm'r of Soc. Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

This Court has indicated the failure to find a specific impairment severe at step two is harmless where the ALJ concludes (a) there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ provides explanation showing she adequately considered the evidence related to the impairment that is ultimately found non-severe.  Fuimo v. Colvin, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing Dillingham v. Astrue, No. 09-CV-0236, 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), Report and Recommendation adopted by 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); see also Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order) (finding that any error in failing to find plaintiff's anxiety and panic disorder severe at Step Two would be

10

harmless because the ALJ found other severe impairments present, continued through the sequential evaluation process, and specifically considered plaintiff's anxiety and panic attacks at those subsequent steps).

Plaintiff argues that the ALJ erred at step two by not finding her migraine headaches to be a severe impairment. Dkt. No. 8 at 7-11. Plaintiff also argues that the ALJ failed to include limitations associated with her migraines in the RFC. See id. The Court finds these arguments unpersuasive.

The ALJ found that plaintiff's obesity, lymphedema, and asthma were severe impairments. T. 17. The ALJ's finding and accompanying analysis indicates that, although she did not find Plaintiff's alleged migraines to be a severe impairment, she did find at least one physical impairment severe and continued with the sequential evaluation. Id. at 17-23. Further, the ALJ's overall decision provides sufficient explanation showing that she adequately considered the evidence related to plaintiff's alleged impairments including those she did not find to be severe. See Fuimo, 948 F. Supp. 2d at 269-70; Reices-Colon, 523 F. App'x at 798. In fact, the ALJ indicated at step two that, "[w]hile there is evidence that [plaintiff] has or has had migraine headaches, diabetes mellitus, hypokalemia, hypertension and gastric ulcers, these conditions cause only slight abnormalities which would have no more than a minimal effect on plaintiff's ability to perform work." T. 17. Addressing migraine headaches specifically, the ALJ noted that plaintiff had complained of migraine headaches to her primary care provider Kelly Storrs, but that, at times Nurse Practitioner Storrs described plaintiff's "frontal headaches" as sinusitis. Id. The ALJ indicated that plaintiff's migraine headaches occurred "much less frequent[ly]" than claimed by plaintiff, occurring only once or twice per month. Id.

11

To be sure, plaintiff's medical records, as outlined in plaintiff's brief, contain notations indicating that plaintiff complained of and received treatment for migraines. Dkt. No. 8 at 8-9 (citing T. 341, 343, 484, 488). However, the treatment records do not support plaintiff's claims regarding the severity and frequency of the migraine headaches. For example, although plaintiff complained of headaches during her September 23, 2014 examination, she did not reference headaches during her October, November, or December 2014 appointments. T. 441, 522, 528, 533. Plaintiff was seen by her primary care provider in March, May and June 2015, and, during those visits, she also did not complain of headaches. Id. at 501, 508, 516.

Plaintiff saw her primary care provider for migraines in July and August 2015. T. 484-497. During the July 2015 visit, plaintiff reported that she was having headaches again which were lasting longer than they had in the past. Id. at 492. Plaintiff described the headaches as different than any she had before with "pounding visual disturbances." Id. Plaintiff denied any nausea or vomiting. Id. At the August 2015 examination, plaintiff reported that she was continuing to have headaches which were lasting longer than they had in the past, and that she continued to experience pounding with visual disturbances. Id. at 484. She continued to deny nausea or being site or sound sensitive. Id. Plaintiff next received treatment for migraines over seven months later in May 2016 when she complained of severe migraines and recurring symptoms. Id. at 341. Dr. Rattenbury, continued plaintiff on her current medications and described the migraines as "well controlled" with three migraines a month. Id. at 344.

The ALJ gave great weight to the opinion of consultative examiner Dr. Rita Figueroa. T. 21. During the examination plaintiff advised Dr. Figueroa that she was taking Propanolol

for migraines which had decreased the frequency of the migraines from once a week to once to twice a month. Id. at 333. Dr. Figueroa determined that plaintiff should avoid smoke, dust and fumes, any respiratory irritants and should avoid activities which require prolonged standing due to her history of deep vein thrombosis. Id. The ALJ found Dr. Figueroa's opinion to be consistent with plaintiff having the ability to perform work at the sedentary exertional level with appropriate environmental limitations. Id.

It is well-settled that any conflict in the evidence is for the ALJ to resolve. See Cage v. Comm'r of Soc. Sec., 692 F. 3d 118, 122 (2d. Cir. 2012). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioners conclusion must be upheld. See Rutherford v. Schweiker, 685 F. 2d 60, 62 (2d Cir. 1982). Given Dr. Figueroa's opinion regarding plaintiff's limitations, there is substantial evidence in the record which supports the ALJ's determination that the plaintiff's migraines were not a severe impairment. In the alternative, the Court finds that any error by the ALJ in failing to find Plaintiff's migraines severe would be harmless because she did find other impairments severe, continued with the sequential evaluation, and provided adequate explanation in her decision showing she properly considered the evidence related to Plaintiff's various impairments. See Fuimo, 948 F. Supp. 2d at 269-70; Reices-Colon, 523 F. App'x at 798. For the reasons above, the ALJ's findings regarding Plaintiff's impairments at step two are supported by substantial evidence and remand is therefore not required on this ground.

## B. Whether the ALJ Properly Evaluated Medical Opinion Evidence

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 416.927(c). "'[T]he opinion of a claimant's treating physician as to the nature and

13

severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" Greek, 802 F.3d at 375 (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." Blinkovitch v. Comm'r of Soc. Sec., No. 15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), Report and Recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" Greek, 802 F.3d at 375 (quoting Burgess, 537 F.3d at 129). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 416.927(c)(1)-(6).

RFC is defined as "'what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work

14

activities in an ordinary work setting on a regular and continuing basis.'" Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." Pardee, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" Hendrickson v. Astrue, No. 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

Plaintiff argues that the ALJ improperly substituted her lay opinion for that of

competent medical opinion on the issue of maintaining work pace and/or attendance. Dkt No. 8 at 11-13. Plaintiff notes that Dr. Rattenbury's opinion states that she would be off task more than thirty-three percent of the day and absent from work from than four days per month. Id. at 11. Plaintiff contends that the ALJ erred in relying on Dr. Figueroa's opinion, as that opinion failed to address plaintiff's work pace and attendance. See id. at 11-16. The Court disagrees. Based upon her examination of plaintiff, Dr. Figueroa found moderate limitations for any activities which require prolonged standing due to her history of deep vein thrombosis. T. 336. As the Commissioner notes, Dr. Figueroa's examination was not silent as to whether plaintiff suffered work pace and attendance limitations; Dr. Figueroa specifically stated "[n]o other limitations seen during this evaluation." Id.; Dkt. No. 11 at 11-12. In rendering that opinion, Dr. Figueroa specifically ruled out any additional limitations on plaintiff's ability to work. See id. As such, contrary to plaintiff's argument, Dr. Figueroa specifically opined that there were no additional limitations which would affect plaintiff's work pace or attendance.

To the extent that plaintiff argues that the ALJ erred in omitting Dr. Rattenbury's limitations derived from plaintiff's lymphedema, the Court agrees with the argument set forth by the Commissioner. See Dkt. No. 11 at 12-13. Dr. Rattenbury's October 18, 2016 questionnaire was only submitted to the Appeals Council, and does not constitute material evidence. See Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988) ("The Social Security Act provides that a court may order the Secretary to consider additional evidence, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. Thus, an appellant must show that the proffered evidence is (1) 'new' and not merely cumulative of

16

what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative.") (internal citation and quotation marks omitted). The ALJ indicated that although plaintiff claimed that she needed to elevate her legs, her medical records established that the lymphedema of her lower extremities had been "largely resolved with physical therapy," and that "[m]any office visits did not even include an examination for edema." T. 20. As the Commissioner notes, absent Dr. Rattenbury's October 18, 2016 questionnaire, no treating or examining source advised plaintiff to elevate her legs since the initial issue in June 2014. Dkt. No. 11 at 12. Moreover, plaintiff's medical records show that plaintiff did not have lymphedema in October 2014. T. 536. Her lymphedema ranged from moderate to normal to under control in December 2014, March 2015, and June 2015 respectively. Id. at 519, 525, 536. Thus, as there is no indication that this new evidence would have influenced the ALJ to decide plaintiff's applilcation differently, see Tirado, 842 F.2d at 597, Dr. Rattenbury's questionnaire does not affect the ALJ's finding.

The ALJ's RFC analysis indicates a thorough and detailed consideration of the examining and non-examining opinions of record, the medical evidence pertaining to Plaintiff's impairments and treatment, and Plaintiff's testimony. T. 18-22. In his decision, the ALJ indicated he had considered Plaintiff's symptoms based on the requirements of 20 C.F.R. § 416.929 and SSRs 96-4p and 16-3p and had considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. Id. at 19. According to the Court's review, the ALJ's analysis adequately summarizes and discusses the evidence of record in determining Plaintiff's RFC. Id. at 14-19.

17

Further, the ALJ's analysis of the opinion evidence provides sufficient consideration of the opinions of record and specific reasons for the weight afforded to each of them, reasons supported by the objective evidence of record. T. 21-22. Moreover, the ALJ was entitled to rely on the opinion of non-examining medical expert Dr. Figueroa if it was better supported or more consistent with the evidence as a whole. See Bliss v. Colvin, No. 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); accord Petell v. Comm'r of Soc. Sec., No. 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014). Again, the Court declines any invitation to reweigh the evidence before the ALJ. See Lewis, 122 F. Supp. 3d at 7.

Because the ALJ properly considered the opinions and provided sufficient explanation for her analysis, the Court finds that the ALJ's RFC analysis (including her analysis of the opinion evidence) is supported by substantial evidence. Remand is therefore not required on this ground.

**C. Whether the Step Five Determination was Supported by Substantial Evidence**

Plaintiff contends that the ALJ erred in relying on the Grids rather than consulting a vocational expert because plaintiff's "significant non-exertional limitations (the limitations to work pace and attendance) . . . further limit[ed] the available occupational base." Dkt. No. 8 at 16. The Court has already determined that there is substantial evidence in the record that supports the ALJ's conclusions regarding plaintiff's limitations. See subsection IV.A-B, supra. As there is substantial evidence in the record supporting the ALJ's conclusion that plaintiff did not have limitations regarding work pace and attendance, and given that the

RFC is for sedentary work with a limitation on concentrated exposure to respiratory irritants, particularly smoke and fumes, the ALJ's reliance on the Grids was proper.  See T. 18-23. As such, substantial evidence in the record supports the ALJ's step five determination, and remand is not required.

## V. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby;

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is **DENIED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated:          November 29, 2018
                Albany, New York

_Christian F. Hummel_
Christian F. Hummel
U.S. Magistrate Judge